Ladies and gentlemen, please rise. This court is now in session. Good morning. Be seated, everyone. Will the clerk call the next case, please. 321-0585 Archer Bank v. Homer Developers, LLC, et al., Thomas Booth and Joan Booth, a.k.a. Joseph Joplin. Mr. Joplin, you are ready to proceed. Step to your right. May it please the court and counsel, Good morning, Your Honors. This case is about whether or not the April 4, 2014 order was a final judgment or ever became a final judgment. Now, what is a final judgment? I guess it's the best place to start. A final judgment under Illinois law is a final determination of liability and damages. So, in other words, a court has to make a final determination of the amount due or the damages here. If the court decides it's not at that point in time going to enter a final amount on the damages and maybe amend it later, then that's not a final judgment. In this case, this is a commercial foreclosure case that involved counts 1 through 8, where foreclosure counts of 9 through 12 were on a guarantee. It's undisputed in this case that on April 4, 2014, Judge Stainis, the underlying judge, granted the banks summary judgment motion on counts 1 through 12. So the question becomes, was that a final determination on liability and damages? It's our contention in this case that, for two reasons, that that was not a final judgment and never became a final judgment. First, it's very clear from the record, as we'll go through, that Judge Stainis, on April 4, 2014, was not making a final determination on the damages. As we all know, this is a commercial foreclosure case with two separate guarantee claims and the foreclosure claims. Now, normally in a foreclosure complaint, upon judgment of foreclosure on a summary judgment, it's not a final judgment and there's not a final determination of damages, right? Because then you've got to go to the judicial sale and then the sale has to be confirmed. It's our contention in this case that Judge Stainis, the prior attorney for Archer Bank, and myself, on the record, agreed that we were going to treat the foreclosure claims – I'm sorry, we were going to treat the guarantee claims the same as the foreclosure claims pertaining to the damages. That there was not going to be a final calculation of the damages on the guarantee claims until after the judicial sale and those amounts were subtracted from the amount due. And then at that point, the court was going to entertain a final judgment. But why didn't the order that was entered on that date state that the order against the guarantors was only for liability purposes only? I mean, it put a number on it, right? That's true. It put a number – there's two – okay, so we're there on April 4th. There's going to be two orders entered at the end of the hearing, right? There's this handwritten order that grants the summary judgment and there's this typewritten order that's like six pages long, the judgment for foreclosure order. That order had to be amended based on the discussions that we were having during the hearing that day that we were going to treat the foreclosure counts and the guarantee counts the same. So Mr. Dodak, who was the lawyer for the bank, had to go and change – add that language into the order, which I'll go through with you later, that identifies that there would be a judgment for foreclosure and a judgment on the guarantees after the judicial sale. So those orders have to be read together, Your Honor, because they were both one – they were both memorializing the ruling by the court that day. Just one of them wasn't entered on that day. One was entered on May 8th. One was – the handwritten one on April 4th and the typewritten one on May 8th. If you read the May 8th order – and I think the trial court judge, Judge Osterberger, who handled this case, agreed with us that the May 8th order contemplated a future judgment on both claims because it used the word shall. But she was concerned about the fact that there were two separate dates on these orders, right? The May – the April order and then was one – a couple weeks later. But it was – that's one – it should be considered one order. Furthermore – But she differentiated between the content of the May – of the April 4th order and the May 8th order, correct? She did – well, first she agreed that, yes, the May 8th order looks like it's contemplating a future judgment. But since the May 8th order didn't say, I'm vacating the April order, then somehow that order was – that language in the May 8th order was surplusage, was unnecessary. But if you look at the transcript of what was being said that day, it's clear that the court was – the foreclosure claims, in fact, that they were going to calculate the damages after the foreclosure sale. So you have to read both orders together. So as I laid out in my brief, on April 4th there was basically four options that could have occurred that day, right? One, the bank could have asked for 304A language and tried to get that from the judge, making it a final judgment then. If the judge said, okay, I'd make it a final determination, I'm going to grant you 304A language, that's a final judgment. It's undisputed that didn't happen here, the bank didn't do that. Secondly, the bank could have voluntarily dismissed the foreclosure claims in an effort to try to create a final judgment on the guarantee claims. Because once the foreclosure claims are voluntarily dismissed, that would, in theory, create a final judgment. That didn't happen here. That's option two. And in my brief, I call them option one, option two, option three, option four. So option one and option two didn't occur here. Option three, apparently what the bank's claiming, is that there was an order in there on April 4th, 2014, that became final upon the entry of the order confirming the sale in August. Now, it's our contention that that did not happen, because for that scenario, option three, to occur, the order could not have been superseded by the May order, and it had to have been the final determination of damages that was done on April 4th, 2014, and the transcript is pretty clear, and the other documents that I'll go through are pretty clear, that there was not a final determination of damages on that day. But, Mr. Gentleman, you're suggesting that both of the orders need to be read in conjunction with one another. Yes, sir. Did the Booths file a notice of appeal on April 21st, 2014? That was related to the motion for summary judgment that the Booths brought. So on April 4th, 2014, there were two motions for summary judgment. The Booths motion for summary judgment and the Banks. The judge denied the Booths motion for summary judgment and allowed an appeal on that, gave us 304A language. They never asked for or sought 304 language on that part of the order. So there were two competing motions, so that appeal had nothing to do with anything that's related to today. So, and then there's option four, which is what we're claiming happened here, that it's possible, it's not illegal or improper for the court to treat the foreclosure claims the same as the guarantee claims and calculate the damages at the end of the case. There's nothing that prohibits that under the law, and the record and the evidence in this case establishes that's what everyone agreed to, and that's how everyone proceeded in this case. Now, I mean, the best place to look, I don't know if Your Honors have, it doesn't look like you have the appendix because it's pretty thick, but attached to the appendix, and I do have copies if you want to read along, so I think it's important, the transcript of April 4, 2014. It's a somewhat lengthy transcript, but that shows us exactly what was going on that day, right? And you can see there's discussion, and I cited it in my brief. I don't know if you, I have copies if your Justices want to look at the transcript and read along with me, because I think it's pretty important what's being said here. I think you cited it in your opening brief and in your reply. I know. Okay. So, I mean, if you look at page A03, appendix 103, so this is the day of the ruling, right? So Judge Stata says on line 3, and the question will be your client, the boost, personally liable under guarantees, and the question will be whether the bank will be pursuing that at some point, and then this is me. I was actually there. This is not some other lawyer that handled this case. This was me. And then I said, because I was trying to bring up the point about the damages and the guarantee claims, are they going to be a final judgment now or at the end of the case? So then I say, right, at some point they will, but that's down at the end. I suppose that would be down, and sorry for the language, but sometimes when you're talking it doesn't come through that great on the transcript, because right now the total amount isn't determined, because, I mean, maybe there is no deficiency, because this was commercial real estate. My client not only pledged that real estate was a loan where the development was going on, but other additional real estate worth millions of dollars. So then we skip through to the very end of the hearing, where I want to reiterate to Judge Stainis what we're doing with the foreclosure counts. And I say on page 8-122, I say, oh, okay, I don't have, I have one issue. I suppose, so they entered a judgment and a certain dollar amount on the guarantees. But theoretically that won't be correct. If ultimately once there's a sale and everything, then the amount of sale will be deducted and they're getting a judgment on the deficiency, right? So here I'm talking to, I'm asking Judge Stainis, saying we're talking about the guarantee claims. They're not going to get a judgment, a final determination on damages until after the judicial sale. And Mr. Dawdyak, who was counsel for the bank at that point, says, correct. Then the court, the court then says the confirmation order would include a specific amount and there would be a memorandum of judgment presented with a specific amount of deficiency as opposed to the $9 million plus. The $9 million, sorry, I didn't mean the point. The $9 million was in that handwritten order, right? It said summary judgment and $9 million. So here's the court saying when we're talking specifically about the guarantee claims, no. We're going to wait until after the confirmation of the sale. So then I go on, I say, so there's no memorandum of judgment going to be entered based on the $9 million, correct? The judge says, Judge Stainis says, cannot until there's a sale. Then I go back in and I say, okay, so we have to put that in there, that it's stayed or something, that's part of it. I just don't want anyone turning around and saying, and then the judge cut me off because I was getting excited, probably like today, if you are looking for some protective language, if you want to say the amount of deficiency judgment shall be determined when the confirmation order is presented, we can do that. This is, again, not talking about the foreclosure counts, talking about the guarantee claims. And then I say, yes, yeah, something like that, is that okay? And Mr. Doddick, the bank's lawyer at that point, says, yeah, I understand, that's how it works. This is what he's telling the judge. And then Judge Stainis says, I don't know, I don't think, I don't know that the bank can proceed on a deficiency until there is a sale and we determine how much money is in the pot. Again, talking about the guarantee claims, not the foreclosure claims. And I say, okay, that's all I need. And the court says, it's on the record. And I say, it's on the, okay, okay, okay. And the court cuts me off again, says, I can't do it anyway. If Mr. Doddick presented a memorandum of judgment today, I couldn't sign it. And I say, okay. And then Mr. Doddick says, we'll present it to the court in order for confirmation, which will include the order of judgment and will include the amount that was bid at the sheriff's sale. So again, the bank's lawyer is agreeing that there is no final determination of damages. That will be done at the end of the case. And then I say, it's fine. And that's how this transcript ends, at the very end of the transcript. So if you look at the transcript here, it's very clear, I believe, that Judge Stainis was not making a final determination on April 4th, 2014, that there was a final judgment or a final determination of damages. He was going to wait and treat it the same as the foreclosure claims. So then if we look at the order that Justice was referring to, the May 8th order. If we look at the May 8th, the language of the May 8th order, it says in the section, section 4 on page 7, it says the proceeds of sale. Talking about the proceeds of the sale, right? And this is what was added in later that day, which took a couple of weeks for counsel to type it up. We added in to G, where it says that the bank will be getting, after the sale, if there's not enough money to pay off everything, the bank would get a judgment for the deficiency against not only the borrowers, the entities, but the guarantors. So it clearly says right here, shall receive a judgment. And that's where Judge Osterberger agreed with us. It says she did believe, she says, well, it does seem like this paragraph does talk about, contemplate a future judgment and determination of damages. So this is what was memorialized as a result of what was said on the record. Now, maybe we could have done it better in hindsight, I suppose. I don't know. We thought it was pretty clear there. And then we skip along to the next issue that supports the fact that there was no final determination of damages. So right after this occurs in April, then the bank comes to us and says, look, we're not going to come after your guy on the guarantee. We're not going to do it. I provided an affidavit. My client provided an affidavit because I was there. And that hasn't been contradicted. Counsel for the bank now says that they talked to Mr. Daudia during the underlying case when we were down in front of Judge Osterberger. They didn't produce any affidavit saying what I was saying was incorrect or I misremembered. So the only evidence before this Court is that the bank said, okay, we're not going to pursue the guarantee after getting this summary judgment motion. So what occurred then in August? The bank files a motion to confirm the sale, right? After the sale occurs, they file a motion to confirm the sale. And in the motion, they attach the draft order, which would have given the bank a deficiency judgment against the booths. And it's right here in this section of the order. As soon as I got this motion, I called up Mr. Daudia and said, what are you doing? I thought you guys weren't going to go after him after the booths on the guarantee claims. And he said, oh, okay, you're right, I forgot. So what he did is he took this language out of the actual order that was entered on 822. So if you compare the draft order in July to the order that was entered, it removed the language giving the bank a deficiency judgment or a judgment against the booths on the guarantee. And the actual order entered on August 22, 2014, confirming the sale, did not give them, the bank, a judgment against the booths on the guarantee. And they pretty much admit that because they're not trying to say, the bank's not trying to say that the August order gave them a judgment against the booths. They're trying to say the April order did. So why would a lawyer, and this is again my affidavit, but I called him and he removed it. Why would the lawyer remove that language? Unless they weren't getting a judgment against it. Oh, okay. One last thing I'd like to say really quickly is that after they got the judgment for foreclosure, the prior lawyers went and got memorandums of judgment, but only against the entities, not against the individuals. Why would the lawyer do that? If he had a judgment against the booths, he wouldn't have just gotten memorandums of judgment against the entities and not the individuals. It doesn't make any sense. And finally, it kind of defies common sense because basically the bank is saying on August of 2014, the court entered two judgments, one for $9 million against the booths and one for $4 million against the entities. Why would a court do that? Especially after based on the conversations that we had and the discussions that we had on the transcript. It just doesn't make any sense that a court would do that. Okay, thank you. Good morning, and may it please the court, counsel. My name is Tom Cassidy. I'm the attorney for the plaintiff, Kelly Archer Bank. The issues in this case are very simple, much more simple than Mr. Gentleman just laid out. There are two main issues in the appeal, whether a judgment was entered against the defendants, Thomas and Joan Booth, and whether a citation to discover assets issued by the bank was proper. And in order to be proper, it has to be based on a valid judgment. I notice Mr. Gentleman didn't mention anything about 1401. He didn't mention anything about the citations. It's important because at this stage, we are so far beyond judgment that the 1401 procedural method of getting this in front of the court was improper. But it's also important to go back and look at the loan documents and to understand why there are different loan documents. There's a mortgage, a note, guarantee, two guarantees. Those documents all have separate promises, separate obligations. They're distinct documents, and they're distinct for a reason, which is – I could go into all the reasons why a mortgage and guarantee are different, but it's laid out in our complaint. There's different counts. So those different documents led to different counts, which led to different judgments. And that's where we are today. That's where we were in 2014, where the foreclosure counts were dealt with separately from the guarantee counts. The third issue really is whether the 1401 motion was procedurally proper, and I think that the court needs to analyze that. Matt, I'll get into that. As to the mortgage, mortgages, there were various judgments of foreclosure. As to the guarantees, there were judgments individually. As to the note, there was a separate judgment as to the deficiency. Another thing Mr. Gentleman did not mention, which is important, is that the borrower here on the note, the entity liable for a deficiency judgment, is Homeware Developers. It's a different entity. It's not the individuals, the booths. That is crucial because the bank could not have obtained a deficiency judgment against the booths. They obtained, instead, a judgment on the guarantee. So everything that Mr. Gentleman said today, and everything in his briefs and in the circuit court, about the transcript of the April 4, 2014 hearing, is really irrelevant as to the guarantee that, or the judgment on the guarantees that was entered against the booths. Because that transcript and that hearing dealt with the guarantees, I'm sorry, dealt with the deficiencies on the note. And at the end of the foreclosure, the deficiency could be given in favor of the bank and against the entities that signed the note. The booths now claim that the April 4, 2014 judgment order is void because it was not restated in the final order, which is the order approving sale. There was no reason for the court to do that. And what they are trying to do is to meld together all of the counts and all of the judgments into one convenient unit, but that's not what they are, because of the different loan documents at the origination of the loan. There is no reason why the court would have re-entered the judgment on the guarantee at the end of the case. The plaintiff bank did not attempt to enforce the judgment between the time that the judgment on the guarantees was entered, in $9.5 million approximately, between that time in April and between August when the order approving sale was confirmed. That order approving sale deducted from the judgment on the guarantees the amount that was had at sale. So that amount, obviously, was reduced. The booths' liability was reduced in the amount that the property sold for, which was several million dollars. I think several, 4.5. You say that that's a fact, the foregone conclusion that it would be reduced by that. Where does that show up in your document? That's in the judgment of foreclosure. That's not what we're talking about. You're talking about the guarantee. That's right. The guarantee, so to answer your question more specifically, it's in the guarantee that it says that. Yes. Yeah, the amount that is owed by the individual guarantors is the amount that's owed on the note. So they are securing or guaranteeing, literally, the note. So if the amount due on the note is a lesser amount than what it was a month ago or a year ago or whatever, then the guarantors only owe that amount. We can't collect from the guarantor more than what is due on the note. So that's in the provisions of the guarantee. It's not discretionary in the provisions of the guarantee? No. I can't imagine that is. I don't know off the top of my head. But following with that logic, your judgment of April 4th, because of the actual numbers that have arrived at until the very end? Well, it's a non-final order. It's entered in a case where there's multiple counts, so 14 counts. So that judgment, we didn't ask for it to be final because we weren't intending to enforce until after we saw what the properties got at sale. So, of course, we weren't going to. I shouldn't say, of course, because sometimes plaintiffs do try to enforce, but the bank in this case did not seek to enforce the judgment between the judgment on the guarantee and the sale. So it was non-final. Well, it was six years after that, correct? That's right. And we have seven years, and it was revived. But even before the revival is when we started to enforce the judgment, and notably after the order-proven sale in the case. So after we determined how much the mortgage properties would reduce the liability of the guarantors and the amount due on the note, then we began enforcement of the judgment against the guarantors years later. And that's statutory. We have that right. Why did your client feel that it was not necessary to refute the allegations made by the Booth as far as the supposed agreement between your former consul and the bank not to enforce when the 2-4-10-0-1 proceedings were going on? So, Judge, there's no evidence that that took place, that that agreement was had. The record shows the opposite. The record shows that there was a draft order for an order-approving sale, which included a personal deficiency against the Booths. I submit that the bank never could have obtained a deficiency against the Booths. It must have been removed from the final order. It could not have been included in the final order. There was a set of data that the bank agreed for there, and there was no response from the bank. That's the point I'm getting to. I mean, I understand your point about the deficiency not being the entity from which the deficiency would be obtained. But the other allegations supporting the 2-4-10-0-1 petition, that's what I'm asking about. Well, Judge, the orders of the court supersede any allegations made in the affidavits that were filed in the case. So we can look now, in retrospect, we can look at the orders of the court and see what was ordered. We don't need to look into a hypothetical situation of what could have happened or what agreement could have been made. We know what the court ordered. The court ordered that the judgment on the guarantees was entered, and that's it. The plaintiff could have dismissed its case right then and there and had a valid judgment on the guarantees for $9.5 million, and that would have been the end of it. I thought it was a non-final judgment. That's right. But, I mean, we could have asked for it to have been final. We could have not proceeded. I should say the plaintiff could have not proceeded with the sale of the property. I mean, that was his choice. Obviously, it was the most efficient, best way to get some sort of recovery on this very large loan is to go through the sale process. The defendant could have probably exercised that right then at that point in time, if you weren't. The bank was not going to foreclose. It would just come to them for the money. Would they step into your shoes then? Would they be able to? I'm sorry, I don't understand your question. I understand that. I think we all understand that separate accounts, separate cause of action, a guarantee is a separate action. Yes. And you've raised the point that you can take your argument, excuse me, just go after the guarantor, and that's it. Yes, that's right. That could just be an independent suit on its own against the guarantor. Okay. So would they be stepping into your shoes then? Could they step into your shoes then and try to force a foreclosure to cover that deficiency? I don't know the answer to that. No, I don't think they could proceed with our case without an assignment of the mortgage to them. They wouldn't have the ability to do that. In my opinion, I haven't researched that. I don't know the answer to that. I have not considered that. I'd like to move to the 1401 portion of this case. Their motion that was brought in the circuit court was brought about six years too late. So they brought it in their seventh or eighth year. They only have two years. It doesn't matter if it was seventh or eighth. They have two years in their 1401 to bring a motion arguing that the judgment is voidable. So the counsel's arguments in the brief, not so much today, but they argued that the April 4th order was void. Judge Osterberger found, no, it actually was voidable because, if anything, even though a judgment did exist and even though the judgment was valid, if anything, it would have been an error on the court's part. Again, this is assuming, in the alternative, that the judgment was not valid, that the court's error would have been a voidable error, a voidable error, and not a void order. So by bringing their motion seeking to declare the order void six years later, they're far outside the 1401 two-year limit. They need to show that it's void, and they can't. It wasn't void. It exists. The court had jurisdiction. It exists in the record. If there was some mistake that was made, and you can look at the transcripts, as Mr. Gentleman suggested, if there was a mistake that was made, the mistake should have been corrected years prior. It should have been corrected right after the case was over. But they had two years. They didn't correct anything within two years. They didn't bring their motion until we started to attempt to collect. And at that time, it was too late. As I mentioned the transcripts of April 4th, I want to also state that you should read the transcript of April 4th because it does state that which the plaintiff is arguing here in this case, that the deficiency judgments. So counsel confuses the deficiency judgment language in the transcript with the guarantee judgment that was already entered on April 4th. They're totally different things. So in his arguments in the brief, in the appellant's brief and in the reply, he argues that the transcript supports his arguments that the deficiency judgment against the Booths should have been that there was no deficiency judgment against the Booths. Admittedly, there was no deficiency judgment against the Booths. There never could have been. So as counsel invited you to, I invite you also to read the transcript of April 4th because you will see that the particular language that's used refers to the foreclosure counts, which are the deficiencies on the notes. And as to that issue also in the appellant's reply brief, it's notable that on page 2 they quote part of the transcript, which I believe was read here today. And I will read this sentence. This Booth's attorney then stated on the record when referring to the April 14th draft order, I'm sorry, the April 4th, 2014 draft order, that quote, so they entered a judgment in a certain dollar amount on the guarantees, but theoretically that won't be correct if ultimately once there is a sale of everything, then the amount of the sale will be deducted, and then they're getting a judgment, and then he wrote in brackets on the guarantee counts on the deficiency, right? Counsel's insertion in brackets into the quote of the transcript, it sort of sums up this whole argument that they're making and why their argument doesn't hold any water, because they had to insert in the quote their own little brackets of information to say on the guarantee counts on the deficiency. So if you were to read the transcript, you would see that it actually does support the plaintiff throughout. I see that my time is up. Any questions? Thank you, Mr. Cassidy. Thank you. I would ask that the circuit court's orders be affirmed. Thank you. Thank you. Counsel, you may go. May I proceed? Yes, Your Honors. I mean, the transcript is pretty clear. I mean, we're talking in the transcript about the guarantee claims. Now, counsel keeps getting hung up on the word deficiency. That's not a real ‑‑ that's a term of art. There's no official legal definition of deficiency. Deficiency means here, after the sale, if there's money owed on the guarantee claims and the foreclosure claims, that will be what the judgment amount, the final determination will be. There's no ‑‑ deficiency isn't exclusively used in foreclosure cases. It just means a deficiency. The last reason I want to bring up is that the April 4, 2014 order could never be a final order, even with respect to the final damages part that we've already talked about, because, as we all know, as counsel ‑‑ or as justice asked the question, it was an interlocutory order or judgment at best, right, on April 14, which means it's subject to revision, which means the April 4, 2014 order could not become a final judgment if an order entered after it or before the judgment confirming sale superseded it or provided the same relief, right, because then that would be a later ‑‑ In theory, that's what they're claiming, right? But the only way the April order could become a final order is if some order in between that period of time did not supersede the April order. In other words, if an order was entered after April that provided all the same relief that the April order did, then the April order becomes meaningless because it's an interlocutory order. It's been superseded by a later entered order. And here, the May 8 order supersedes the April order because the April order and paragraph 1 is what they're relying upon. It says motion for summary judgments granted in a certain amount. That's it. You look at the May order. Why wasn't the May order? Why didn't they just say this order supersedes all previous orders? Well, because we thought we were going to enter them in the same day. He had this typed order, this long one, and he was just going to fix it up. And then one of them got entered that day, and this one just took a couple weeks for it to get entered. I guess they sent it to the court. They didn't get it. It should have been entered on the same day because that's what the judge ordered. In fact, at the bottom of the handwritten order, it says right down here that we're entering a second order. So everybody knew that there was going to be two orders that should be read together. But if you're not going to read them together, you're going to read this one on different days. This order provides all the same relief as this order. Down here, it grants all the relief in the complaint, same as granting summary judgment. And then later on, it provides the amounts that are owed, the damages that are owed. So it provides everything. Everything in the May order was in the April order. Therefore, it superseded it. Plus, this order used the term judgment, also said it retains jurisdiction to enforce it. So this order no longer exists because this order superseded it. It provided everything that this order did. So that's the secondary reason, in addition to the fact that I think we've already beat this to a dead horse, that the transcript shows treating guarantee and foreclosure claims the same. We're going to do the damages determination at the end. Counsel really didn't have an answer to your question about where's their affidavit to contradict me because there's nothing to contradict. It's true. I was there. I think the transcript supports me. I'm an officer of the court, and I provided this affidavit to explain what happened here, Your Honors. They had the opportunity. They talked to Mr. Daudet. He couldn't provide any contrary evidence. That's why they didn't produce the affidavit, Your Honor, I think. And I'm entitled to at least a presumption of that. And then finally, I just want to explain kind of what happened here, I think, from the bank standpoint. So they had the lawyers. We had the agreement. The case is over. Then Mr. Kruger was the guy at the bank dealing with us, right? He left after about a couple years. And then they got a new law firm. The bank merged or was bought out by somebody. And then six years later, somebody rifles through the old files and comes up and tries to enforce this case. And then at that point in time, they created Mr. Daudet or Mr. Cassidy created a document that was not in court. It wasn't a memorandum of judgment. But just look at this document. It says on this document that they started their collection proceedings, that they got a judgment against the entities for $9 million on April 4th. That's not true. They got a judgment against the entities in August for $4 million. So basically what happened here looks like somebody came in six years later, looked at the file, didn't have the transcript, didn't call me, didn't call Mr. Daudet to see what actually happened here. So they ended up proceeding with these cases. The last thing I want to talk about, it's really covered in the briefs, this 1401 stuff, Sarkisian, the Supreme Court case recently dealt with this. If you're trying to attack a void order, this is the procedure you have to follow. You don't have to do the two. You're not limited to two years, and you don't have to show a meritorious defense. But a void order is one part of that jurisdiction, right? An avoidable order is something where there's a mistake that was made. Well, we're claiming there was no final judgment. If you look at the cases in my brief, then they file a citation. The citation is void, and the cases say this. You cannot institute or serve a citation or proceed on a citation unless you have a final judgment. And if you do, all that's void. So that's the voidness, too. We're saying if there is no final judgment entered on guarantee counts, then that's void. And, two, you can't collect on a judgment unless you have a final enforceable judgment. And that's why it's a 1401 petition under Sarkisian because how else would someone be able to attack this, too? I mean, I like the Sarkisian case. It provides some sort of procedural mechanism for people to attack void orders. Thank you. Any other questions? No. Thank you, everyone. Counsel, you were here appealing the denial of the summary judgment order argument in this courtroom. Yes, sir. After all of this occurred. Correct. What was the need for that? The need for that was, as we laid out in our affidavit in part, that my client had to give—so there was a foreclosure property where the loan was on, right? I understand, counsel. The guarantee is what you were appealing. You asked for the 304 language. You got it. You brought it in. Right. But that was after you had a guarantee that the bank wasn't going to collect again. Right. So that was the agreement with the bank because there was a separate property that was not part of this that we were trying to keep. And that's what the appeal was related to, that there was a settlement with a brother and that my client would be able to keep that other property, not the property that was—this was a development in Homer Glen. So that appeal was trying to say, look, there was a settlement. He gets to keep his mall because he had to turn over, like, a $3 million mall, which he did in this case in partial satisfaction of the judgment. Thank you. You bet. Okay. Thank you. Thank you. Thank you, counsel, for your arguments today and for your briefs. There will be a written opinion in due course.